IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Cheryl Barton, | : | |
| Plaintiff | : | Civil Action 2:09-cv-00741 |
| v. | : | Judge Frost |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

### REPORT AND RECOMMENDATION

Plaintiff Cheryl Barton brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability Insurance and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.**

Plaintiff Cheryl Barton maintains that she became disabled at age 41 by coronary artery disease, anxiety and problems with her left wrist. The administrative law judge found that Barton retains the ability to perform a reduced range of jobs having light exertional demands. She found that her anxiety was not a severe impairment limiting her residual functional capacity.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because substantial evidence proves that the administrative law judge

improperly rejected Ms. Barton's anxiety and depression as a "non-severe" impairment with no non-exertional limitations.

**Procedural History.**  Plaintiff Cheryl Barton filed her application for disability insurance benefits on May 30, 2006, alleging that she became disabled on May 25, 2006, at age 41, by coronary artery disease, anxiety and problems with her left wrist. (R. 143 and 147.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On June 27, 2008, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 6-46.) A vocational expert and a medical advisor also testified. On December 30, 2008, the administrative law judge issued a decision finding that Barton was not disabled within the meaning of the Act. (R. 56-66.) On June 24, 2009, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 1-3.)

**Age, Education, and Work Experience.**  Barton was born March 14, 1965. (R. 143.) She has a GED. (R. 154.) She has worked as a cashier. She last worked November 9, 2006. (R. 156.)

**Plaintiff's Testimony.** Plaintiff testified that while she was working she experienced pain in her legs, lower back, shoulder and neck. She saw her doctor repeatedly for her complaints, and she was diagnosed with spinal stenosis in her neck. She has four vertebrae in her spine that are narrowing. She has osteoarthritis in her

lower back and and bursitis in her left shoulder and wrist. She also has a ganglion cyst between the bottom of her thumb and her wrist. She underwent physical therapy for about a month, but it did not provide her with relief for longer than a day. She also tried injections, but they were not successful. She takes 400 mg of etodolac for pain as needed. She testified that she had taken it approximately three times in the past week for pain. She indicated that the pain pills provide barely any relief.

Barton also testified that she is tired all the time because she has difficulty sleeping. She cannot sit for very long before needing to get up. She reported difficulty bending over, stooping, and climbing steps. She takes Nortriptyline because of her poor sleep and has taken Ambien in the past. She usually goes to bed around midnight and wakes up about three hours later.

She lives alone in an apartment. Her parents help her with her laundry because it is hard for her to lift. Her parents also assist her with grocery shopping and carrying her groceries into her apartment.

Although she was instructed to increase her exercise in order to build up her endurance, she testified that it caused her more pain. She smokes one pack a day.

Barton testified that she still has a great deal of anxiety regarding her heart condition. She has anxiety attacks approximately three times a week. She had not informed her doctor that she had been having anxiety attacks.
(R. 10-24.)

**Medical Evidence of Record.**  The administrative law judge's decision fairly sets out the relevant medical evidence of record.  This Report and Recommendation will only briefly summarize the evidence concerning Barton's psychological impairment.

<u>Sue Levy, M.D.</u> Dr. Levy, a psychiatrist at Scioto Paint Valley Mental Health Center, treated plaintiff from May 1993 through October 1994 for depression. (R. 230-51.) She had periods of feeling hopeless and helpless (R. 234) and suicidal (R. 235, 237). In March 1994, after having treated Barton for almost a year, Dr. Levy concluded that a Barton had a personality disorder with dependent and oppositional traits. (R. 236.)

Dr. Levy first examined Barton, then 28 years old, on May 26, 1993. Barton reported a three year history of feeling anxious around other people, particularly authority figures.  She believed her anxiety stemmed from a former marriage with an abusive spouse. She reported feeling jumpy and nervous. She had both initial and middle insomnia. She felt numb and different from others. Dr. Levy diagnosed post-traumatic stress disorder, major depressive disorder, attention deficit disorder, and a rule out diagnosis of social phobia. (249-51.) In addition to continued depression, Barton reported difficulty sleeping and concentrating. (R. 241.) Dr. Levy prescribed her Prozac. (R. 247.)

On February 23, 1994, Barton reported that she had had four episodes of "attacks" in the past week. During one episode, she was taken to the hospital and administered Haldol. During an attack, she cried, and was scared and mumbling. She reported seeing "this black thing" and hearing voices yelling at her. She believed that

4

committing suicide would solve her problems with hallucinations, although she did not view suicide as a good alternative because Satan would make things worse for her. (R. 239.)

In March 1994, Barton felt she was "doing much better." (R. 236.) In April 1994, Barton continued to have days when she felt suicidal, but "much less than in the past. She attribute[d] her suicidal thought to her husband controlling her." (R. 235.)

By June 1994, Barton "described a period of hopelessness/helplessness which occurs once a month and lasts about ½ hour." (R, 234.) She was doing "much better overall." *Id.* In July 1994, Barton had been drinking because she felt irritable and angry and was experiencing marital problems. She said she would try to cut down on her alcohol intake. Dr. Levy reduced plaintiff's Prozac dose. (R. 233.) In October 1994, Barton was feeling better on a combination of Lithium and Prozac. (R. 231.) That was apparently her last treatment by Dr. Levy.

David T. Hart, M.D. A May 23, 2006 letter from Dr. Hart, a cardiologist, noted that plaintiff experienced anxiety during episodes of chest pain. He was uncertain as to what role her anxiety disorder played in these episodes as compared to what was simply organic heart disease. (R. 379.)

Berger Hospital. On May 5, 2006, plaintiff presented at the emergency room with complaints of left posterior shoulder pain. Barton was upset and reported becoming tingly all over her body and hyperventilating. In addition to be diagnosed with left

5

shoulder pain, Barton was diagnosed with anxiety. She was described as having a high level of anxiety. (R. 261-63.)

<u>Robert L. Sliwinski, D. O. and Donald A. Fouts, D.O.</u> Dr Sliwinski and his partner Dr. Fouts, primary care physicians, treated Barton from April 6, 2000 through November 2007. (R. 312 and 639.) Their treatment records for that period do not support a finding that Barton is disabled. (R. 312-57 and 636-47.) On June 30, 2006, Dr. Sliwinski completed a form for the Bureau of Disability Determination. He noted that Barton was treated for anxiety, although he indicated that she was capable of functioning. (R. 278-80.)

On February 25, 2004, Dr. Fouts, plaintiff's noted that he treated her for depression. (R. 356-57.) A March 24, 2004, office note states "✓ depression" and "mood improve".  (R. 352.) Dr. Fouts prescribed Zoloft. (R. 353.)  Plaintiff complained of continued insomnia. (R. 314.)

Dr. Fouts and Dr. Sliwinski regularly noted that plaintiff's anxiety was stable. (R. 639, 640 and 659.) For example, treatment notes from November 29, 2007 state that Barton was well-oriented, her mood and affect were appropriate, and her recent and remote memory was intact. The assessment was anxiety. Her symptoms were said to be stable. (R. 643.)  She denied any panic episodes, loss of concentration, or loss of coping ability. (R. 639, 657.) On July 10, 2006, Dr. Fouts  reported to the Commissioner that plaintiff had no work limitations, either physical or mental. (R. 312.)

<u>Christopher L. Ray, Ph.D.</u>  On August 11, 2006, Dr. Ray, a psychologist, performed a psychological evaluation of Barton to assess her cognition and mental status at the request of the Bureau of Disability Determination. (R. 468-476.)

On mental status examination, her speech was of normal rate, rhythm and volume. Her thought processes were logical, coherent, and goal-directed. Her associations were well-organized. Barton had flat affect, and she described her self as feeling tired and angry. She reported that she felt depressed and easily frustrated. Her appetite was fair. She had difficulty falling asleep and staying asleep. She felt hopeless, helpless, worthless, and guilty. She had decreased energy. She also reported mood swings, problems concentrating, and difficulty with her memory. Although no overt signs of anxiety were present, such as fidgetiness or trembling, she reported often worrying about doing things incorrectly. She had panic attacks and experienced hyperventilation, irregular heartbeat, numbness, and dizziness. (R. 472.)

Barton was alert and oriented in all four spheres. She was able to repeat back six digits on a digits forward task and four digits on a digits backward task.  She remembered two out of three words after five minutes on a brief word learning task.

With respect to her activities of daily living, Barton reported that she spent her day working, watching television, and doing puzzles. She was able to perform the cleaning, cooking, and shopping. Dr. Ray stated:

> In terms of symptoms. Ms. Barton complained of depression and anxiety. She described transient auditory and visual hallucinations that seem to occur during acute phases of depression. She described sleep difficulties and a variable appetite. She noted that she has lost approximately ten

7

> pounds in the last two months. She indicated that she experiences occasional panic attacks. She acknowledged a history of sexual abuse as a child. She presented with appropriate eye contact and a full range of affect. She does not have any suicidal ideas. She acknowledged becoming easily frustrated and she fears making bad decisions. She also reported experiencing helplessness, hopelessness, worthlessness and feelings of guilt. Her symptom severity must be rated between 51 and 60.
>
> In terms of functioning, she has decreased activities. She maintains contact with family and one friend but she does not socialize much with them. She does not participate in any community or extracurricular activities. She does participate in the household chores. She watches television. She completes the shopping tasks and pays her bills. From a functional standpoint, her GAF must be rated between 61 and 70.
>
> Because she functions in the upper limits of the moderate range for symptom severity, a final GAF score of 60 has been assigned.

(R. 474.) Dr. Ray diagnosed depressive disorder, not otherwise specified and anxiety disorder, not otherwise specified. With respect to Barton's ability to perform work-related mental abilities, Dr. Ray opined that she was moderately impaired in her ability to relate to others, including co-workers and supervisors. She would be able to relate sufficiently to co-workers and supervisors on simple, repetitive tasks. Dr. Ray found that her ability to understand, remember, and follow instructions was unimpaired. Barton's ability to maintain attention, concentration, persistence, and pace to perform simple, repetitive tasks was mildly impaired. Barton's ability to withstand the stress and pressures associated with day-to-day work activity was moderately impaired because of the effects of her depression and anxiety. (R. 475.)

<u>Douglas Pawlarczyak, Ph.D.</u> On September 9, 2006, Dr. Pawlarczyak, a psychologist, completed a psychiatric review technique and mental health residual

8

functional capacity evaluation at the request of the Bureau of Disability Determination Services. (R. 478-95.)

Dr. Pawlarczyak concluded that Barton was moderately limited in her ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, he found moderate limitations in her abilities to carry out detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Barton was moderately limited in her abilities to interact appropriately with the general public; to accept instructions and to respond appropriately to criticism from supervisors; and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. With respect to adaptation, plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting.

Dr. Pawlarczyk concluded that Barton could have difficulty performing tasks which consistently required a rapid pace of production, complex decision making or dealing with other stressful factors in a work environment. Dr. Pawlarczyk believed that Dr. Ray's consultative examination should be given controlling weight. (R. 480.)

Karla Voyten, Ph.D. reviewed the evidence of records and affirmed the September 9, 2006 assessment as written. (R. 549.)

**Administrative Law Judge's Findings.**

9

1. The claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in section 216(i) of the Social Security Act through September 30, 2011.

2. The claimant has not engaged in substantial gainful activity since November 9, 2006 (20 CFR §§ 404.1520(b) and 416.920(b)).

3. The claimant has the following severe impairments: degenerative disc disease of her lumbar and cervical spine; left should bursitis; and history of cardiac stent (20 CFR §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4 (20 CFR §§ 404.1520(d) and 416.920(d).

5. Upon careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 20 pounds occasionally and lift up to 10 pounds frequently; to stand/walk at least 6 hours in an 8-hour workday; to sit at least 6 hours in an 8-hour workday; but can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps or stairs, balance, stoop, crouch, kneel or crawl; and cannot lift with her non-dominant left arm above shoulder level.

6. The claimant is capable of performing past relevant work as a salad maker, mail sorter, and waitress. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR §§ 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the Social Security Act, from November 9, 2006 through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Doc. 9-3 at 13-21.)

**Standard of Review**. Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" *Id*. *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.** Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because substantial evidence proves that the administrative law judge improperly rejected Ms. Barton's anxiety and depression as a "non-severe" impairment with no non-exertional limitations. Plaintiff maintains that an impairment is considered non-severe only if the impairment is a slight abnormality that has such a minimal effect on the individual that it is not expected to interfere with the individual's ability to work.

Barton maintains that she has a longstanding history of mental health problems and has been treated for depression, suicidal ideation, a personality disorder, post-traumatic stress disorder, and an anxiety disorder. Plaintiff maintains that the

11

administrative law judge improperly relied upon the treatment notes of plaintiff's primary care physician. The administrative law judge ignored Barton's testimony that she failed to discuss her anxiety attacks with her doctor.

Plaintiff further argues that the administrative law judge improperly rejected the opinions of the consultative examiner and the psychiatric reviewer. The administrative law judge also erred in rejected the opinion of plaintiff's cardiologist, who noted that her recurrent chest pain post-stent implant was related to her anxiety disorder.

Plaintiff maintains that the administrative law judge also improperly relied on her former work activity as a cashier because this work did not constitute substantial gainful activity ("SGA").

**Analysis.** The administrative law judge concluded that plaintiff's allegations of anxiety did not constitute a severe impairment:

> The claimant also alleges disabling anxiety with panic attacks. The record establishes that the claimant was treated for post traumatic stress disorder and depression in 1993 and 1994, and was prescribed Zoloft for anxiety in February 2004. The claimant has not pursued any mental health treatment from a mental health professional in recent years. However, her primary care physician regularly reports that the claimant's anxiety is stable on medication (e.g., 11/20/07 – Exhibit 20F; 3/12/08 – Exhibit 22F). The only evidence that suggests that the claimant's anxiety might be severe consists of the one-time consultative examiner on August 11, 2006 (Exhibit 8F). She reported a history of psychiatric treatment in the past, but reported that currently she was working as a cashier 30 hours per week at a grocery store. She presented to the examination angry and, in contrast to the reports of her primary care provider, reported symptoms of irritability, poor sleep, easy irritability, mood swings, concentration and memory problems, and panic. Mental status examination showed flat affect, depressed mood, one error with serial sevens, and average cognitive functioning. She was diagnosed with depressive disorder, not otherwise specified (nos), and anxiety disorder, nos. The consultative examiner

> nonetheless assessed a Global Assessment of Functioning Score of 60, which indicates only mild to moderate symptoms or difficulties in social or occupational functioning. Based on the consultative examination, DDS reviewers opined that the claimant experienced severe depression and anxiety, finding moderate deficits in sustaining concentration, persistence or pace, and moderate deficits in social functioning (Exhibit 11F, 9/9/06). As is described elsewhere herein, I give greater weight to the consistent reports of the claimant's primary care provider that the claimant's anxiety is stable on medication, rather than crediting a one-time consultative examiner who based his assessments on reports given solely by the claimant at a time when the claimant was performing work activities that exceeded the DDS assessed mental capacity for work. I therefore find that there is no objective medical basis to find that any depression and/or anxiety experienced by the claimant results in more than mild limitations in activities of daily living; maintaining concentration, persistence or pace; and social functioning; with no recent episodes of decompensation. I therefore find that any depression and/or anxiety are not severe impairments for purposes of the Social Security Act.

(R. 60-61.)(Footnotes omitted.) The administrative law judge further stated:

> The claimant appears to experience some anxiety about whether or not her heart will again become blocked. She also reports panic attacks that cause her heart to race and/or have palpitations. However, the medical record clearly establishes that there has been nothing wrong with the claimant's heart since May 2006.
>
> In addition, the claimant's reported anxiety and recurrent panic attacks are nowhere supported in her treatment records. She last pursued mental health treatment from 1992 or 1993 through May 1994 (Exhibit 1F and testimony), and with no intervening mental health treatment, asked for a Zoloft prescription on June 22, 2004 (Exhibit 7F). No mention of mental health is made in any treatment records until June 16, 2006, when her primary care physician prescribed Lexapro for anxiety at the claimant's request (Exhibit 6F). Since then, the treatment records of her primary care physician, Dr. Trivedi, either make no mention of anxiety (e.g., Exhibit 18F), or report that the claimant's anxiety is stable with medication (Exhibit 20F – November 2007; Exhibit 22F – March and April 2008). The claimant testified that in response to a panic attack, she gets a headache, her jaw hurts, and her pain increases. However, she also testified that she is okay if she doesn't worry a lot. She testified that she has many friends, and sees her neighbor 2-3 times a week. Based on the report of the

13

> claimant's treating source, along with fairly consistent testimony and lack of mental health treatment since 1994, I find that the claimant's anxiety and/or panic attacks are reasonably well controlled with medication and activity, and cause no more than mild limitations in activities of daily living, sustaining concentration, persistence or pace, or social functioning, with no recent episodes of decompensation of extended duration.

(R. 63.) The administrative law judge rejected the opinion of Dr. Ray, the consultative examiner:

> The consultative examiner apparently took at face value the claimant's reports that she had difficulties with fast-paced tasks, memory, concentration, and panic attacks; as well as reports that she occasionally sees something out of the corner of her eye or hears a voice calling her name at night when she is seated in bed. He nonetheless assessed a GAF score of 60, which indicates only mild-to-moderate symptoms or difficulties with occupational or social functioning (Exhibit 8F). Based on the consultative examiner's report, DDS reviewers found that the claimant had moderate limitations in sustaining concentration, persistence or pace, and moderate limitations in social function (Exhibit 11F – 9/9/06), but that she could nonetheless perform simple routine tasks with only superficial contact with others (Exhibit 10F – 9/9/06). I disagree. As described above, even the consultative examiner found that the claimant had only mild to moderate limitations in occupational or social functioning (GAF of 60). More significant, at the time of the consultative examination, the claimant was successfully performing tasks that exceed the assessed limitations as a cashier at a gas station 30 hours a week. She has amended her alleged onset date to November 9, 2006, when she last worked. However, there is no evidence that the claimant's mental health has deteriorated since that date. Instead, the claimant's primary care physician reports that the claimant's anxiety is stable on medication, and that any headaches that accompany anxiety or stress are likewise controlled on medication. The claimant's treating source nowhere refers to any reported hallucinations. In addition, the claimant reports that she has many friends, some of whom she sees on a regular basis. I therefore give the DDS assessment of the claimant's mental health and resulting limitations no weight, since it is inconsistent with the claimant's primary care provider's treatment records, is inconsistent with her lack of mental health treatment since 1994, and is inconsistent with her own reported activities both while she was working and since she has stopped working.

14

(R. 64.)

**Severe Impairment.**  The Act provides that the Commissioner will determine a claimant "to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §423(d)(1)(A).  The Commissioner's regulations provide:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment, and are, therefore, not disabled.  We will not consider your age, education, and work experience.

20 C.F.R. §404.1520(c).

Repeating the language of the statute, the regulations provide that an impairment is severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities. . . . "  20 C.F.R. §404.1520(c).  Basic work activities include:

- "Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling."
- "Capacities for seeing, hearing, and speaking."
- "Understanding, carrying out, and remembering simple instructions."
- "Use of judgment."
- "Responding appropriately to supervision, co-workers, and usual work situations."
- "Dealing with changes in a routine work setting."

15

20 C.F.R. §404.1521(b). An impairment is not severe "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Murphy v. Heckler*, 801 F.2d 182, 185 (6th Cir. 1986); *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985). This construction of §404.1520(c) is intended to insure that the Commissioner does not "deny meritorious disability claims without proper vocational analysis." *Higgs*, 880 F.2d at 862 (citation omitted). The function of the severity requirement is to screen out claims that, based on the medical record, are totally groundless. *Higgs*, 880 F.3d at 863; *Farris*, 773 F.2d at 90 n.

To determine whether a mental impairment significantly limits a claimant's ability to do one or more basic work activities, the Commissioner assesses the degree of limitation that the mental impairment imposes on four functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and, (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3); *Tuck v. Astrue*, No. 1:07-cv-00084, 2008 WL 474411, at *4 (W.D.Ky., Feb. 19, 2008).

Here, the administrative law judge properly considered plaintiff's mental impairment throughout the sequential evaluation. At step two of the sequential evaluation, the administrative law judge found no objective basis to find that claimant's depression or anxiety resulted in more than mild limitations in her activities of daily

living, social functioning, and concentration, persistence or pace. The administrative law judge also noted that Barton did not have any recent episodes of decompensation. (R. 61.) As a result, the administrative law judge concluded that the impairment was not severe. In formulating her residual functional capacity, the administrative law judge considered all of Barton's impairments, including those impairments that she had previously concluded were not severe. *See Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 244 (6th Cir. 1987)(concluding that the Secretary did not commit reversible error by finding that an impairment was not severe because the Secretary completed the remaining steps in the disability determination and properly considered claimant's non-severe condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity). The administrative law judge relied on the Dr. Fout's treatment notes, the fact that plaintiff had not sought out mental health treatment, and her social interactions to conclude that her anxiety did not limit her ability to perform work-related activities. The administrative law judge also noted that plaintiff had been capable of working as a cashier at a gas station, and there was no evidence demonstrating that her mental condition had deteriorated since that time. As a result, there is substantial evidence in the record support the administrative law judge's conclusion that Barton's allegations concerning anxiety and panic attacks did not have support in the record.

      From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED**.  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel  
United States Magistrate Judge